**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JEFFERY SCOTT WILSON,

                Plaintiff,

                                                           Case No. 3:14-cv-840-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Jeffery Scott Wilson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of hepatitis C, glaucoma in his right eye, diabetes, high blood pressure, high anal hernia, and irritable bowel syndrome. See Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed October 2, 2014, at 176. On November 15, 2010, Plaintiff protectively filed an application for DIB, and on November 17, 2010, he protectively filed an application for SSI. Tr. at 12, 76-79, 152-53.[2] The initially alleged onset date of September

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed October 2, 2014; Reference Order (Doc. No. 13), entered October 3, 2014.

[2] The administrative transcript does not include Plaintiff's application for SSI, and the Application Summary for Disability Insurance Benefits included in the transcript states that Plaintiff applied for DIB on November 18, 2010. Tr. at 152. Other documents, however, such as the Decision of the Administrative Law Judge and the Disability Determination and Transmittal forms, indicate that

(continued...)

27, 2007 was later amended to January 1, 2010. Tr. at 33, 152-53.³ Plaintiff's applications were denied initially, Tr. at 76, 91-95 (DIB); 77, 96-101 (SSI), and were denied upon reconsideration, Tr. at 78, 106-10 (DIB), 79, 111-15 (SSI).

On November 27, 2012, an Administrative Law Judge ("ALJ") held a hearing at which the ALJ heard testimony from Plaintiff, who was represented by a non-attorney,⁴ and a vocational expert ("VE"). Tr. at 31-54. At the time of the hearing, Plaintiff was forty-seven (47) years old. Tr. at 35. On January 24, 2013, the ALJ issued a Decision finding Plaintiff not disabled since January 1, 2010. Tr. at 12-25. Plaintiff then requested review by the Appeals Council, Tr. at 7, and he submitted evidence to the Council in the form of a brief from his representative, see Tr. at 5; see also Tr. at 249-51 (representative's brief). On May 30, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3. On July 21, 2014, Plaintiff commenced this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal: (1) whether the ALJ "failed to articulate good cause for not crediting the opinions of the treating cardiologist's ([Sumant Lamba, M.D.]) opinion and the treating psychiatrist's ([Alberto de la Torre, M.D.]) opinion"; (2) whether the

---

²(...continued)
Plaintiff filed a DIB application on November 15, 2010, and an application for SSI on November 17, 2010. Tr. at 12, 76-79.

³ Plaintiff previously had been granted an application for SSI filed on September 24, 2008, based on which he was determined to be disabled between October 5, 2007, and December 1, 2009, when his disability was determined to have ended. See Tr. at 66-75 (Administrative Law Judge Decision dated August 26, 2010).

⁴ The hearing transcript does not indicate that Plaintiff's representative, Karen Hardcastle, was a non-attorney, but in a letter she identified herself as a paralegal. Tr. at 8 (copy of letter).

ALJ "erred in finding that Plaintiff's hepatitis C and gastrointestinal conditions were stable throughout the relevant time period"; and (3) whether the ALJ's "credibility finding is flawed because the [ALJ] failed to realize that [Plaintiff] was legally disabled . . . during the period when the [ALJ] faulted [Plaintiff] for not working." Plaintiff's Brief (Doc. No. 18; "Pl.'s Br."), filed December 24, 2014, at 1, 13-25. Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") on April 6, 2015. After a thorough review of the entire record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed for the reasons stated herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 14-24. At step one, the ALJ determined that Plaintiff "ha[d] not engaged in substantial gainful activity since January 1, 2010, the amended alleged onset date." Tr. at 14 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: status post heart stents, ischemia, hepatitis C, obesity, irritable bowel syndrome, sleep apnea, shortness of breath, angina, and affective disorder." Tr. at 14 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 14 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work . . . . He needs the option to sit or stand within his assigned workstation. He must avoid ladders and unprotected heights. He must avoid the operation of heavy, moving machinery. He must avoid concentrated[] dust, fumes and gases. He needs a low stress position with no production lines. He needs simple tasks. He is able to occasionally bend, crouch, kneel, stoop, squat and crawl. He must avoid push and pull arm controls. He needs a monocane for ambulation.

Tr. at 16 (emphasis and citation omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "[b]alancer," "[t]ruck [d]river," or "[q]uality [c]ontrol" inspector. Tr. at 23 (emphasis omitted). At step five, the ALJ considered Plaintiff's age (forty-four (44) years old on the alleged disability onset date), education ("at least a high school education"), work experience, and RFC, and determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 23

(emphasis and citation omitted). Relying on the testimony of the VE, the ALJ identified as representative jobs an "order clerk," a "surveillance system monitor," and a "document preparer." Tr. at 24 (capitalization omitted). The ALJ concluded that Plaintiff "has not been under a disability . . . from January 1, 2010, through the date of th[e] [D]ecision." Tr. at 24 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the

evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As indicated above, Plaintiff raises three issues before this Court. The first concerns the ALJ's analysis of two different medical opinions; the second concerns the ALJ's analysis of Plaintiff's hepatitis C and gastrointestinal conditions; and the third concerns the ALJ's credibility finding. Pl.'s Br. at 1, 13-25. These issues are addressed in turn below.

### A. Medical Opinions

Plaintiff argues that the ALJ "failed to articulate good cause for not crediting" two medical opinions, those of Drs. Lamda and de la Torre. Pl.'s Br. at 1, 13-20. The undersigned first summarizes the applicable law with respect to medical opinions and then addresses the ALJ's analysis of each of the medical opinions at issue.

#### 1. Applicable Law

The Regulations establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x

---

[6] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

---

[7] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and

supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

### 2. Dr. Lamba

Plaintiff contends that the ALJ "failed to articulate good cause for not crediting" the opinion of treating cardiologist Dr. Lamba. Pl.'s Br. at 1, 13-18. Dr. Lamba treated Plaintiff on a number of occasions between March 2011 and August 2012. Tr. at 439-40, 467-75, 480-83, 488-91, 496-501, 538-43, 545-55; see Tr. at 530 (phone message for Dr. Lamba dated August 2, 2012). As a treating physician, Dr. Lamba's opinions were entitled to controlling weight unless the ALJ articulated reasons showing good cause for discounting them. See Lewis, 125 F.3d at 1440. The undersigned notes that the ALJ gave controlling weight to one opinion of Dr. Lamba, dated February 27, 2012, that Plaintiff "reported feeling well, and Dr. Lamba said [Plaintiff] was asymptomatic." Tr. at 21, 22. Two Dr. Lamba opinions, brief questionnaires dated July 11, 2011,[8] and November 14, 2011, are explicitly given less than controlling weight. See Tr. at 21; see also Tr. at 428-30 (July 2011 opinion); Tr. at 502-04 (November 2011 opinion). Plaintiff focuses on these two opinions in his argument. Pl.'s Br. at 17-18.

The July 2011 questionnaire states that Plaintiff was "[u]nable to walk long distances without rest" due to "severe [shortness of breath] [and] fatigue." Tr. at 429. The November

---

[8] The undersigned agrees with Defendant that the signature on this form, although unclear, does not appear to be that of Dr. Lamba. See Def.'s Mem. at 5; Tr. at 430. However, despite Defendant's assertion that "it cannot be assumed to be the opinion of a treating physician," Def.'s Mem. at 5, the ALJ refers to the opinion's author as "the claimant's cardiologist," Tr. at 21, which suggests to the undersigned that the ALJ found the opinion to be that of a treating physician, even if it might not be Dr. Lamba. Because the author's particular identity is irrelevant to the matter at issue, the undersigned refers to the author of the treating cardiologist's opinion as Dr. Lamba.

2011 questionnaire states that Plaintiff "suffers from significant shortness of breath [and] fatigue on exertion," as well as "intermittent chest pains." Tr. at 503. The ALJ gave "some weight" to both of these opinions because they were consistent with or did not contradict Plaintiff's treatment records. Tr. at 21. Immediately following this, the ALJ stated as follows: "However, controlling weight is accorded to Dr. Lamba's February 2012 treatment note in which [Plaintiff] reported feeling well, and Dr. Lamba said [Plaintiff] was asymptomatic." Tr. at 21; see Tr. at 540, 542. The ALJ otherwise did not articulate reasons for giving less than controlling weight to the treating physician opinions of July and November 2011.

The undersigned finds, however, that the ALJ's RFC assessment is consistent with these opinions. The medical opinions indicate that, on exertion, Plaintiff experienced shortness of breath, fatigue, and intermittent chest pains, and that he could not "walk long distances without rest." Tr. at 429, 503. The physical limitations suggested by these opinions are accounted for in the ALJ's finding that Plaintiff has the RFC to perform "sedentary work," Tr. at 16, which is work that generally involves sitting, very light lifting and carrying, and when necessary, "occasional[]" walking and standing, 20 C.F.R. § 404.1567(a), and thus does not require Plaintiff to exert himself or "walk long distances without rest," Tr. at 429. The ALJ also indicated that Plaintiff "needs the option to sit or stand within his assigned workstation." Tr. at 16. Nothing in Dr. Lamba's opinions is inconsistent with this ultimate finding. Any error in the ALJ's failure to articulate with greater specificity why he supposedly did not give certain opinions controlling weight is therefore harmless.

**3. Dr. de la Torre**

Plaintiff contends that the ALJ "failed to articulate good cause for not crediting" the opinion of treating psychiatrist Dr. de la Torre. Pl.'s Br. at 1, 13, 18-20. Dr. de la Torre treated Plaintiff as far back as 2008, including several occasions during the relevant period. See Tr. at 388-413, 514-27. As a treating psychiatrist, Dr. de la Torre's opinions were entitled to controlling weight unless the ALJ articulated reasons showing good cause for discounting them. See Lewis, 125 F.3d at 1440.

In discounting Dr. de la Torre's opinion, the ALJ focused on a Psychiatric Evaluation Form for Affective Disorder that Dr. de la Torre completed on January 23, 2012. Tr. at 20; see Tr. at 514-20. Of particular note, Dr. de la Torre opined on this evaluation form that Plaintiff had a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities," as well as a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." Tr. at 515, 519. Dr. de la Torre also noted that Plaintiff suffers from various symptoms, including anhedonia, sleep disturbance, decreased energy, difficulty "[g]etting along with" family and friends, and impairments in concentration, decision making, and task completion. Tr. at 514-18. Dr. de la Torre diagnosed Plaintiff with "[b]ipolar disorder, depressed type," and "adjustment disorder with anxiety and dysphoria." Tr. at 515.

The ALJ gave "little weight" to this opinion for the following stated reasons:

First the opinion is <u>internally inconsistent</u> in that Dr. de la Torre said [Plaintiff] was unable to function outside of a highly structured environment then Dr. de la Torre said [Plaintiff] did not require a highly structured and supportive environment within his home. These statements are diametrically opposed, and Dr. de la Torre failed to explain the contradiction. The opinion is also

> <u>inconsistent with the treatment records</u>, which show that [Plaintiff]'s symptoms are only moderate and well controlled.

Tr. at 20 (emphasis added); <u>see</u> Tr. at 514-520.  Plaintiff takes issue with the ALJ's two stated reasons for discounting this opinion of Dr. de la Torre.  Pl.'s Br. at 19-20.

As to the first reason, Plaintiff does not contest that Dr. de la Torre's opinion contains an inconsistency.[9]  <u>See</u> Pl.'s Br. at 19-20.  Plaintiff contends, however, that what the ALJ called an "internal[] inconsisten[cy]" is actually a mere "typographical error."  Pl.'s Br. at 19.  This contention is unavailing.  The whole evaluation form consists of standardized questions, which primarily required Dr. de la Torre to convey his medical opinion by responding simply with a handwritten circle, check mark, or "yes" or "no."  Tr. at 514-20.  To the extent the opinion contains errors, typographical or otherwise, it gave the ALJ no clear means of distinguishing errors from non-errors.  A clear internal inconsistency within the opinion, therefore, provided the ALJ with good cause to discount the opinion.

Plaintiff also disputes the ALJ's finding that the opinion is "inconsistent with the treatment records, which show that [Plaintiff's] symptoms are only moderate and well controlled."  Tr. at 20; Pl.'s Br. at 19-20.  The undersigned finds, however, that the treatment records sufficiently support the ALJ.  The ALJ noted in particular Dr. de la Torre's record of an April 2012 appointment that the ALJ discussed as follows:

> [T]here was no evidence of depression, dysphoria or anxiety.  [Plaintiff] said he was sleeping well.  Xanax was discontinued, and Dr. de la Torre noted that [Plaintiff]'s bipolar disorder had improved.  [Plaintiff]'s GAF scores were usually in the mid 50's, which indicates that his symptoms were only moderate.

---

[9] The "internal inconsistency" exists between one statement indicating Plaintiff has a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement," Tr. at 515, and a statement that Plaintiff does not "require a highly structured and supportive setting within his . . . home," Tr. at 519.

> [Plaintiff] seemed asymptomatic at his April 2012 appointment, which supports the finding that his mental impairments are not work preclusive.

Tr. at 22; see Tr. at 523.

Other treatment records from Dr. de la Torre similarly support the ALJ's finding. In February and May 2011, Dr. de la Torre observed that Plaintiff's emotional discomfort appeared "moderate," Tr. at 388,[10] 389, and on many visits from 2010 to 2012, there were no signs of depression or dysphoria, Tr. at 391-92, 522-23, 526. Although earlier reports indicate that Plaintiff had trouble sleeping, Tr. at 388-89, 391, later reports from January and April 2012 indicate that medication appeared to resolve the problem, Tr. at 523-24. A few reports between 2010 and 2012 state that Plaintiff was irritable, dysphoric, or anxious, but Dr. de la Torre related these moods to difficulties Plaintiff was having with his daughter or his Social Security application process. Tr. at 390, 524-25. All of Dr. de la Torre's reports from these years indicate that Plaintiff's cognitive functioning appeared intact. Tr. at 388-93, 522-27.

The ALJ's finding of moderate, well controlled symptoms is further supported by other evidence in the administrative transcript. For example, in contrast to Dr. de la Torre's January 2012 opinion that Plaintiff has extreme difficulty concentrating and completing tasks, Tr. at 518, examining psychologist Allison Keiter, Psy. D., opined in March 2011 that Plaintiff is "able to follow and understand simple directions and instructions," "to perform simple and more complex tasks independently," and "to maintain attention and concentration and a regular schedule," Tr. at 364. Dr. Keiter noted that Plaintiff is able independently to handle

---

[10] The administrative transcript includes a duplicate of this treatment record from May 4, 2011. See Tr. at 388, 527.

various tasks, such as bathing, dressing, cooking, cleaning, shopping, driving, and managing money. Tr. at 363.[11]

The ALJ's finding that Plaintiff's symptoms are moderate and well controlled is supported by substantial evidence. To the extent the ALJ found Dr. de la Torre's opinion to be internally inconsistent and inconsistent with other records, the ALJ articulated good cause to discount it.

## B. Plaintiff's Hepatitis C and Gastrointestinal Conditions

Plaintiff argues that the ALJ "erred in finding that [Plaintiff's] hepatitis C and gastrointestinal conditions were stable throughout the relevant time period," and that the ALJ "failed to meaningfully analyze the severity" of these conditions. Pl.'s Br. at 1, 20-22. More specifically, Plaintiff argues that the ALJ failed "to meaningfully evaluate the impact of [Plaintiff's] severe fatigue[12] and gastrointestinal pain on his ability to perform full-time sustained employment." Pl.'s Br. at 22.

Throughout the Decision, the ALJ addressed Plaintiff's hepatitis C, gastrointestinal issues, and related symptoms, including (as Plaintiff suggests, Pl.'s Br. at 22) fatigue, depression, abdominal discomfort, and difficulty with concentration. The ALJ addressed, for instance, the medical documentation of these conditions, such as the August 2012

---

[11] Dr. de la Torre also had indicated no "marked or extreme difficulties" in Plaintiff's ability to handle these daily living activities, Tr. at 517 (emphasis omitted), despite indicating that Plaintiff is unable "to function outside a highly supportive living arrangement," Tr. at 515.

[12] Plaintiff suggests that Plaintiff's fatigue is a symptom of his hepatitis C condition. See Pl.'s Br. at 22. Plaintiff also asserts that symptoms of hepatitis C include "depression, nausea, anorexia, abdominal discomfort, and difficulty with concentration." Id. It is not clear that Plaintiff actually experiences all of these listed symptoms, and Plaintiff only points out in the transcript evidence of fatigue and abdominal discomfort. Id. at 21-22.

assessment of Plaintiff's treating gastroenterologist, Ana Corregidor, M.D., indicating irritable colon, hepatitis C, gastroesophageal reflux disease, and a gallbladder polyp, and indicating that Plaintiff was scheduled for a follow-up appointment in six months. Tr. at 18; see also Tr. at 620 (Dr. Corregidor's report). The ALJ noted Plaintiff's hearing testimony that hepatitis C cost him his last job and that his irritable bowel syndrome sometimes caused toileting accidents when away from home. Tr. at 17; see also Tr. at 38, 43-44 (hearing testimony). In addition, the ALJ found that Plaintiff's "main complaints were shortness of breath and fatigue," Tr. at 21, and that Plaintiff "has moderate difficulties in concentration, persistence, and pace," Tr. at 19, and the ALJ addressed treatment reports related to depression, Tr. at 18, 20, 22.

Although the ALJ recognized Plaintiff's conditions and related symptoms, the ALJ also recognized that Plaintiff regularly performed various activities, such as shopping, cooking, cleaning, and driving a car or motorcycle, that are "consistent with the ability to do sedentary work." Tr. at 20-22. The ALJ concluded, therefore, that "[t]he medical evidence of record supports a finding that [Plaintiff] is able to perform a reduced range of sedentary work," Tr. at 22, and the ALJ specifically stated that Plaintiff's "history of treatment for . . . hepatitis C" is consistent with this finding, Tr. at 21.

This finding is generally supported by Plaintiff's treatment records. See Tr. at 618-52. In May 2011, Dr. Corregidor observed "no associated symptoms" of hepatitis C, Tr. at 626, and a radiology analysis from September 2011 indicates "no significant abnormalities" in the gastrointestinal tract, Tr. at 650. Although a radiology analysis in May 2011 reports a "[p]rogression of increased hepatic echogenicity," Tr. 652, later reports in September 2011

and July 2012 consistently note only "[m]oderate hapatic steatosis," Tr. at 648-50. In August 2012, Dr. Corregidor stated that a colonoscopy had revealed "some irritation." Tr. at 618. Also noted around this time was a "[g]allbladder polyp, essentially unchanged." Tr. 648. Plaintiff was scheduled for a follow-up appointment six months after his August 2012 assessment, Tr. at 620, that the ALJ acknowledged in concluding that Plaintiff's "gastrointestinal issues are stable." Tr. at 22.

Overall, these records offer no indication that Plaintiff's conditions are so serious as to preclude employment. Therefore, notwithstanding Plaintiff's contention that his medical conditions are "not stable," Pl.'s Br. at 22, the undersigned finds that the ALJ's conclusion that Plaintiff is capable of performing "a reduced range of sedentary work" in spite of his hepatitis C and gastrointestinal conditions, Tr. at 22, is supported by substantial evidence.

## C. Credibility Finding

Plaintiff argues the ALJ's "credibility finding is flawed because the [ALJ] failed to realize that [Plaintiff] was legally disabled . . . during the period when the [ALJ] faulted [Plaintiff] for not working." Pl.'s Br. at 1, 22-25. The undersigned finds, however, that the ALJ's credibility finding is supported by substantial evidence.

To establish a disability based on testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of any underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir.

1991) (stating that "the standard also applies to complaints of subjective symptoms other than pain")). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

"[C]redibility determinations are the province of the ALJ." Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). The ALJ "must articulate explicit and adequate reasons" for finding a claimant "not credible." Wilson, 284 F.3d at 1225. "When evaluating a claimant's subjective symptoms, the ALJ must consider things such as (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). After considering the claimant's subjective complaints, "the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." Tr. at 17. In arguing that the ALJ's credibility finding is flawed, Plaintiff refers to the ALJ's comment that Plaintiff "has no reported earnings for 2008 and 2009" and "did not explain his inconsistent earnings history." Tr. at 22. Plaintiff correctly observes that this was an error. In remarking on this gap in Plaintiff's earnings history, the

ALJ overlooked that the Administration previously had determined Plaintiff to be disabled between October 5, 2007 and December 1, 2009, based on an earlier application for benefits, see Tr. at 66-75 (ALJ Decision dated August 26, 2010), a fact that had been addressed at Plaintiff's hearing in this case, see Tr. at 33-35.

Notwithstanding this error, the ALJ's credibility determination is supported by a number of reasons other than Plaintiff's earnings history. The ALJ found, for instance, that Plaintiff's statements were contradictory, in that Plaintiff said he "could not be around people," but elsewhere he said that he regularly attended church and visited family and friends. Tr. at 22; see Tr. at 43 (Plaintiff's hearing testimony that he is distractible around people); Tr. at 517 (Dr. de la Torre's report that Plaintiff has extreme difficulty "[g]etting along with" family and friends); Tr. at 41 (Plaintiff's hearing testimony about attending church and visiting family and friends). The ALJ also found that Plaintiff exaggerated his symptoms. Tr. at 22. On one occasion, Plaintiff told his physician, Mary Yoder, M.D., "that his pain was 10/10, but Dr. Yoder wrote that [Plaintiff] appeared normal." Tr. at 22; see Tr. at 559. On another occasion, Plaintiff "said his hip and leg pain was 8/10," while his physician, Lynn Harper-Nimock, M.D., "reported that [Plaintiff] was in no acute distress and had a normal gait." Tr. at 22; see Tr. at 334-35. Given these specific points addressed by the ALJ, the undersigned finds that despite the ALJ's error regarding Plaintiff's earnings history, the ALJ's credibility finding is supported by substantial evidence.

## V. Conclusion

Based on a thorough review of the administrative transcript, and upon consideration of the respective arguments of the parties, the Court finds that the ALJ's Decision is supported by substantial evidence.

In accordance with the foregoing, it is hereby **ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 18, 2015.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

clr
Copies to:
Counsel of record